**UNITED STATES of America, Appellee**

v.

**Charles SHARK, Appellant.**

**No. 93–3213.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 21, 1995.

Decided April 18, 1995.

---

Ralph D. Martin, appointed by the court, Washington, DC, argued the cause for appellant.

Timothy J. Heaphy, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the briefs were Eric H. Holder, Jr., U.S. Atty., John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, DC.

Before: SILBERMAN, BUCKLEY, and GINSBURG, Circuit Judges.

PER CURIAM:

Appellant Charles Shark was charged and convicted by a jury of drug distribution and conspiracy charges in violation of 21 U.S.C. §§ 841, 846 (1988 & Supp. V 1993), as well as criminal forfeiture under 21 U.S.C. § 853(a)(1) (1988), and was sentenced to 360 months for each drug offense. He appeals his convictions on the ground that his counsel did not provide him with effective assistance, depriving him of his rights under the Sixth Amendment. Shark also claims that he is entitled to resentencing because the district court mistakenly thought that it lacked discretion not to sentence him as a career offender under § 4B1.1 of the Sentencing Guidelines. We uphold the convictions and affirm the sentence.

I.

In pressing his Sixth Amendment claim, appellant sets forth several alleged errors by trial counsel, only one of which warrants discussion.[1] This is Shark's contention that defense counsel abandoned a pre-trial victory which, by the prosecutor's own admission, would have made it impossible for the government to present its case. According to appellant, counsel retreated from her position in order to mollify the

---

1. Appellant also claims that the trial court committed reversible error by allowing defense counsel to act under a conflict of interest and by not telling the jury to disallow statements made by the prosecutor in closing argument. On neither occasion did defense counsel object—these incidents are among those cited by Shark as indicia of her fecklessness—and we conclude quite readily that neither amounts to plain error.

court, which was ostensibly upset by defense counsel's timing in raising the issue. On the first day of trial, after jury selection, defense counsel challenged the government's intention to provide the jury with transcripts of three audiotapes of conversations recorded by an undercover officer while purchasing drugs from Shark's co-conspirators. Defense counsel made a "general" and a "specific" objection. The general objection was that the occasionally poor quality of the recordings did not allow for a fair transcription of the tapes. The specific objection contested the transcripts' attribution at one point of the word "Charles"—the defendant's first name—to one of the co-conspirators. Defense counsel maintained that despite listening to the tape "[a]t least a hundred times," she was unable to make out the word "Charles."

Shark's ineffective assistance claim hinges on his assertion that although the district court sustained the objections, defense counsel abandoned her position (inexplicably). Both propositions are debatable. First of all, the district court never definitively ruled on defense counsel's motion; to the contrary, the judge's statements on the matter were inconsistent and apparently inconclusive. He initially responded to the objections by stating, "Well, until they are ironed out, I'll let [the government] use the transcripts. If there's any doubt, we can play the tapes." He noted that defense counsel had been ordered to lodge any objections long ago, but then the judge appeared to change course, telling the prosecutor, "Look, I can't allow them to be used over defense counsel's objection." After this remark, however, the judge seemed to revert to his initial position. "I don't know whether [the objections] are valid or not," he said. "These are things that I ordered to be worked out before trial. She's a little bit late." Finally, the judge simply closed discussion on the matter, stating, "Let's move on."

When defense counsel reiterated her objections the next day, the court asked the prosecutor if the government would be hindered by not using the transcripts. Before getting an answer, however, the court went on to express its frustration with the timing of the objection, and his exchange with defense counsel (Ms. Roberts), particularly his expression of pique, figures prominently in Shark's appeal.

THE COURT: Now this is the very thing I told you all about, lectured her partner about, but he didn't pay any attention to me. He doesn't pay any attention to me, anyhow, and next time I'm going to get his attention and put him in the cell block.

MS. ROBERTS: Judge, please.

THE COURT: I am, because he constantly ignores this court. He's always got an application for a continuance because he's got to be in another court. He doesn't obey the orders of this court. This is a good example.

The prosecutor sought to address defense counsel's specific objection to the third tape, but the district court stated, "I'm not going to allow any of them in if she's going to object, and I'll deal with this matter of her and her law firm's dereliction in duty after the trial." He told the prosecutor, "You may be right," but said, "I can't do anything about it." The prosecutor replied, "Your Honor, . . . I just strongly urge you, we cannot do this case without transcripts. That's all there is to it. We cannot do the case." Although the judge seemed to have made up his mind to sustain the objection, he apparently still had not reached a firm decision on whether to prohibit use of the transcripts (or to examine them himself, as he had previously suggested was possible), for he then asked the prosecutor (Mr. Kohl), "Do you have any recommendations as to what I should do with them?"

A somewhat confusing exchange then took place, which ultimately obviated any need for the judge to make a final ruling on defense counsel's objection.

MR. KOHL: Here's my recommendation, and this is that I think even Ms. Roberts would agree that she—

THE COURT: Talk to her if you've got something you can work out with her.

MR. KOHL: I can address her specific objection to tape three. . . . And that is, if she wants, I can take the word "Charles"

out, if that's something that she definitely disagrees with.

THE COURT: Go ahead.

MR. KOHL: But my request is that with respect to that, in general, the argument that she's making is one for closing argument ... and I think that she'd be, frankly, if I discern her objection, she'd be comfortable with that.

THE COURT: I don't know, Mr. Kohl. It's not your fault.

MS. ROBERTS: If counsel is willing to omit the name "Charles" from the transcript, coupled with the court's instruction and an addendum I ask the court to consider giving, and that is that the jury be advised that if their (pause)—and I'm losing my mind.

THE COURT: Well, talk to him so he can tell me with precision what it is you want.

After a discussion off the record, defense counsel told the court that she had reached an agreement with the prosecutor.

MS. ROBERTS: If counsel will omit the word "Charles" from the transcript and the court will, together with its other instruction, advise the jurors that if their, what they hear on the tape does not coincide with the transcript, it's what they hear that controls and not the transcript.

THE COURT: Well, that's the law.

MS. ROBERTS: And that's the only other request I'd make finally, and I think that will resolve it and Mr. Shark would be happy.

THE COURT: Then you've withdrawn all your objections?

MS. ROBERTS: I've withdrawn all my objections, given what counsel is willing to do and the court's instruction to the jury.

In light of these statements by defense counsel, even if we were to view the judge's declarations, "I'm not going to allow any of them in if she's going to object" and "I can't do anything about it," as a final ruling on the transcripts—which we think is by no means clear given his subsequent invitation of suggestions from the prosecutor—we do not think that defense counsel can be said to have abandoned her position. She withdrew her objections, to be sure, but only after she had extracted a concession from the prosecutor and an assurance from the judge about the nature of his instruction to the jury.

As Shark's appellate counsel acknowledged, we normally would not look twice at trial counsel's withdrawal of her objection in considering Shark's ineffective assistance claim. As set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), such a claim has two components; the defendant must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Shark's claim falters at the first step. The prosecutor's concession, coupled with the court's assurance as to its instruction, at least arguably satisfied defense counsel's stated concerns, since the transcripts no longer contained the word "Charles" and the jury was to be told that the tapes were to predominate over the transcripts in the event of any inconsistency—including, perforce, the inclusion of words that a listener could not discern. In light of this, we would not be able to say that defense counsel's withdrawal of her objections "fell below an objective standard of reasonableness," the benchmark for deficiency under *Strickland*. 466 U.S. at 688, 104 S.Ct. at 2065.

■ This case raises an additional issue, however, because Shark claims that counsel was coerced into abandoning her position by the judge's threatened reprimand of her and her partner. Shark maintains that the court created a conflict between the defense counsel's personal interest (to mollify the judge) and that of her client (to insist upon the objection to the transcripts). We must decide, then, whether the *reason* that Shark attributes to defense counsel's otherwise unassailable decision—fear of sanctions stemming from her tardiness in raising the objection—should affect our appraisal of his claim of ineffective assistance.

Shark's effort to have us view this case as one falling into the conflict of interest subset of ineffective assistance claims is rather ingenious. A defendant who can establish that "an actual conflict of interest adversely affected his lawyer's performance" is relieved

from the stringent showing required under *Strickland*. *Id.* at 692, 104 S.Ct. at 2067 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (footnote omitted)). Recognizing that "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests," *id.*, the *Strickland* Court reaffirmed *Cuyler v. Sullivan*, which held that a defendant who can demonstrate that his lawyer acted under a conflict need only show that the conflict had some negative effect upon his defense (defined as "an actual lapse in representation"). *Cuyler*, 446 U.S. at 349-50, 100 S.Ct. at 1719.

■ We need not determine, however, whether in this case defense counsel's conduct, although not "objectively unreasonable" under *Strickland*, nevertheless amounts to a "lapse in representation" within the meaning of *Cuyler*, for we think that Shark's ground for claiming a conflict of interest—friction between trial counsel and the court—is insufficient as a matter of law.[2] We very much doubt that mere fear of rebuke from the court could ever give rise to a conflict of interest sufficient to establish a predicate for ineffective assistance. Were that the case, *any* provocation of the court, even on the smallest matter, could be maneuvered into an excuse for invalidating a conviction. Usually, when a defendant claims that a judge's hostility impaired defense counsel's zealous advocacy, the right that defendant seeks to redeem on appeal is the right to a fair trial. *See, e.g., United States v. Logan*, 998 F.2d 1025, .1028-30 (D.C.Cir.), *cert. denied sub nom. Robinson v. United States*, — U.S. ——, 114 S.Ct. 569, 126 L.Ed.2d 469 (1993). When no objection is made at trial to the circumstances allegedly constraining defense counsel's freedom to act in her client's best interests, we review only for plain error, in keeping with FED.R.CIV.P. 52(b). *See United States v. Olano*, — U.S. ——, ——–——, 113 S.Ct. 1770, 1777-79, 123 L.Ed.2d 508

(1993). Under the standard set forth by that Rule, the defendant must show that the court's error was "particularly egregious," *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), and we are to correct only those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). That, obviously, is a far more difficult standard than the "lapse in representation" test that Shark would have us apply to this case.

We think it fair to say that any rebuke sufficient to create a cognizable conflict of interest would, virtually by hypothesis, so hamper counsel's zealous representation as to violate a defendant's right to a fair trial—and would be independently remediable on those grounds. Of course, if judicial expressions of dissatisfaction were severe enough to lead defense counsel to make decisions that are both objectively deficient and prejudicial, the *Strickland* requirements for showing ineffective assistance would be satisfied. But a defendant cannot avoid those requirements by seeking to make out a claim of ineffective assistance under the more lenient *Cuyler* standard when the asserted conflict of interest is said to arise from ordinary friction between a judge and defense counsel at trial. We see no need further to complicate this already confusing province of the law by embracing an additional framework for assessing whether judicial discipline of counsel has disrupted a defendant's representation.

## II.

■ Shark's resentencing argument, although less complex, fares no better. Shark was sentenced under the Sentencing Guidelines' career offender provision, § 4B1.1. A defendant qualifies as a career offender if he has two prior felony convictions for either a

---

2. Consequently, we have no occasion to consider the approach adopted by several circuits for assessing whether a conflict of interest has led to a "an actual lapse in representation" that would justify reversing a conviction. *See, e.g., Stoia v. United States*, 22 F.3d 766, 770-71 (7th Cir. 1994); *Winkler v. Keane*, 7 F.3d 304, 309 (2d

Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1407, 128 L.Ed.2d 79 (1994); *United States v. Gambino*, 864 F.2d 1064, 1070-71 (3d Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 566 (1989); *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985).

crime of violence or a controlled substance offense and the crime for which he is currently being sentenced falls into either of those two categories. Shark met those criteria, as he had been convicted of robbery in 1974 and of attempted robbery in 1981. Shark claimed, however, that consideration of his prior convictions resulted in assignment of a "criminal history category [that] *significantly* overrepresent[ed] the seriousness of his past conduct and future threat to society," *United States v. Beckham,* 968 F.2d 47, 55 (D.C.Cir.1992), as his prior convictions had occurred 13 and 19 years before his current offense. He asked the judge to consider the intervening years as a reason for departing downward from the range applicable to career offenders in computing his sentence. *See* U.S.S.G. § 4A1.3.

Shark maintains that the district judge wrongly thought himself to lack any discretion to depart downward. Shark's claim is not that the judge abused his discretion by refusing to depart downward—such decisions, we have said, are not reviewable. *United States v. Spencer,* 25 F.3d 1105, 1112 (D.C.Cir.1994); *Beckham,* 968 F.2d at 53. Rather, Shark bases his appeal on our promise to "remand a case for resentencing when the district court indicates erroneously that 'his discretion was constrained in a way that it. actually was not.'" *Id.* (quoting *United States v. Hazel,* 928 F.2d 420, 424 (D.C.Cir. 1991)).

The sentencing judge was quite evidently aware of his discretion. Not only did Shark's counsel request a downward departure, but the prosecutor in arguing that such a departure was not warranted volunteered that "the court has some latitude" in sentencing "where the defendant can show the court [that] for eight or nine years he has been a law-abiding citizen." The judge, moreover, expressly asked defense counsel if she wanted to present evidence supporting downward departure, inviting "anything that you want to put on that would mitigate toward the defendant." There would, of course, be no point in such a statement if the judge thought himself constrained to reject the request for·downward departure as a matter of law. Finally, midway through the proceed-

ings, the judge told defense counsel, "I don't see any basis on what I've heard so far that gives me any leeway"—a statement that, we think, indicates that the judge appreciated his discretion but thought that he had not been presented with any reason to exercise it.

Shark clings to statements by the judge that he felt "constrained" to sentence Shark as a career offender, requiring imposition of a prison term that the judge thought to be "a long one and one … which I probably would not give if we didn't have the Sentencing Guidelines." But these comments and others, such as the recognition that "there's not a whole lot of leeway that a judge has in these cases," do not indicate a misunderstanding of the discretion afforded a judge in assigning a defendant a criminal history category under the Guidelines. This sort of remark is often made by a sentencing judge who has been asked to depart from the Guidelines sentence but concludes that the grounds that would permit discretionary departure have not been established. We have no doubt this is what happened in this case, especially as the judge made the statements in question *after* he expressly concluded that Shark's argument for departure—the long period of time separating his present offense from his prior convictions—was unpersuasive. "I understand that counsel has taken the position that these are old violations; but the fact is that a good part of the time [in between the convictions] the defendant was incarcerated." The judge's response to the arguments put before him indicates that he plainly understood them to be within his discretion to consider.

\*    \*    \*

For the foregoing reasons, the convictions and sentences are hereby affirmed.

*So ordered.*