139 F.3d 924
 329 U.S.App.D.C. 231
 UNITED STATES of America, Appellee,
v.
Robert N. TAYLOR, Appellant.
 No. 97-3028.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 21, 1998.
Decided April 3, 1998
 
 [329 U.S.App.D.C. 233] Appeal from the United States District Court for the District of Columbia (No. 96cr00233-01).
 Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, Washington, DC, was on the briefs. David A. Howard, Assistant Federal Public Defender, entered an appearance.
 Rachel Adelman-Pierson, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee, with whom Mary Lou Leary, U.S. Attorney, Washington DC, at the time the brief was filed, John R. Fisher and Elizabeth Trosman, Assistant U.S. Attorneys, Washington, DC, were on the brief.
 Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.
 ROGERS, Circuit Judge:
 
 
 1
 Appellant Robert N. Taylor appeals the denial of his pre-sentence motion to withdraw his guilty plea to felony criminal contempt and wire fraud. He contends that, despite the fact that his plea was entered following the trial, the district court abused its discretion by not holding an evidentiary hearing on claims that his trial counsel had a conflict of interest that denied him the effective assistance of counsel under Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Because Taylor's averments related to matters outside of the trial record and were sufficient to demonstrate, if credited, that trial counsel had a conflict of interest that adversely affected the adequacy of his representation, we reverse and remand the case for an evidentiary hearing.
 
 I.
 
 2
 In the fall of 1995, the Securities and Exchange Commission ("SEC") filed a civil enforcement action against appellant, Robert N. Taylor, alleging that he had operated his company, the Better Life Club of America, Inc., as a fraudulent Ponzi scheme. Thereafter, the district court issued both a temporary restraining order and a preliminary injunction freezing all of Taylor's personal and corporate assets.[1] The instant appeal arises out of Taylor's prosecution for criminal contempt for his alleged violation of these freeze orders.
 
 
 3
 The government pursued two contempt citations against Taylor, one for criminal contempt arising out of a series of bank transactions and a second for civil contempt arising out of Taylor's refinancing of his home. The first effort began on May 1, 1996, when the government filed a show cause application for criminal contempt alleging that Taylor had violated the freeze orders by engaging in more than two hundred different banking transactions and by failing to disclose the existence of several bank accounts. To avoid a jury trial, the [329 U.S.App.D.C. 234] government asked the district court, and it agreed, to limit any sentence to no more than six months imprisonment or a fine of no more than $5,000, effectively charging Taylor with a petty offense misdemeanor of criminal contempt. See 18 U.S.C. § 1(3) (1988); United States v. Nachtigal, 507 U.S. 1, 4, 113 S.Ct. 1072, 1073-74, 122 L.Ed.2d 374 (1993); Frank v. United States, 395 U.S. 147, 148-50, 89 S.Ct. 1503, 1504-06, 23 L.Ed.2d 162 (1969). The show cause hearing began on July 1, and was continued until July 19, when the district court deferred its ruling until July 22, pending ongoing plea negotiations.
 
 
 4
 While the criminal contempt proceeding was pending, the SEC learned that Taylor and his girlfriend, who had been brought into the civil enforcement action as a relief defendant, had refinanced their home and received a "cash out" share of the refinancing. It subsequently initiated a civil contempt proceeding, alleging that Taylor and his girlfriend had violated the freeze orders. A hearing was held on July 17, 1996, before a different judge, who took the matter under advisement.
 
 
 5
 Before either judge ruled in the criminal or civil contempt proceedings, however, Taylor entered into a comprehensive plea agreement with the government. The global agreement encompassed not only the banking transactions underlying the misdemeanor contempt proceedings, but also Taylor's actions in securing the home refinancing. Taylor agreed to plead guilty to wire fraud, see 18 U.S.C. §§ 2, 1343, for several alleged misrepresentations he had made in his refinancing application,[2] as well as to felony contempt, see 18 U.S.C. § 401(3), for both the refinancing and the bank transactions.[3] Taylor faced a maximum possible sentence of five years' imprisonment and a substantial fine on the wire fraud charges, see 18 U.S.C. § 1343, in addition to three years of supervised release and a requirement that he make full restitution. The felony contempt charge carried an unspecified maximum sentence to be determined at the discretion of the court. See 18 U.S.C. § 401. In exchange, the government agreed to withdraw its original misdemeanor criminal contempt charges, request the SEC to dismiss its civil contempt application, and request concurrent sentences for contempt and wire fraud, with the former sentence no longer than the latter. Additionally, the government agreed to allocute for the maximum reduction of his sentence for acceptance of responsibility under section 3E1.1 of the Sentencing Guidelines, forego the underlying securities fraud claim as relevant conduct, and not to prosecute Taylor's girlfriend. Pursuant to the agreement, Taylor pleaded guilty, following a Rule 11 hearing, to wire fraud and felony criminal contempt on July 22, 1996. See FED.R.CRIM.P. 11.
 
 
 6
 Prior to sentencing, Taylor wrote a letter to the district court indicating that he wanted to withdraw his guilty plea and request the appointment of new counsel. On the same day, August 30, 1996, he filed a motion to withdraw his plea on the ground of ineffective assistance of counsel. With newly appointed counsel, Taylor filed a revised motion and a supporting affidavit. Taylor's ineffectiveness allegations initially consisted of three general claims: erratic conduct, economic coercion, and a conflict of interest.
 
 
 7
 As to the first, the record shows that during the course of the securities fraud and misdemeanor contempt proceedings, the district court repeatedly had expressed concern about the adequacy of Taylor's representation. Trial counsel had failed to appear for two hearings in the SEC proceeding and exhibited other erratic behavior as a result of personal problems relating to substance abuse. Notwithstanding suggestions from the district court that he might wish to retain a different lawyer, Taylor continually expressed [329 U.S.App.D.C. 235] satisfaction with trial counsel.[4] Nevertheless, in support of his motion to withdraw his guilty plea, Taylor averred that trial counsel had missed several meetings with him regarding the plea negotiations and been otherwise distracted or inattentive. Additionally, Taylor alleged that trial counsel had failed to explain fourteen different provisions of the plea agreement prior to his entry of his plea.
 
 
 8
 Taylor also claimed that trial counsel had "financially coerced" him into pleading guilty because Taylor was unable to meet counsel's "unrelenting" fee demands. Specifically, Taylor alleged that in late June or early July of 1996, trial counsel "asked for an additional $5,000 to proceed to trial, and expressed a clear lack of interest in fighting [the] case when [Taylor] advised him that he could not pay." Thereafter, counsel allegedly pressured Taylor to accept the government's plea offer.
 
 
 9
 Finally, Taylor alleged that trial counsel was unable to render effective assistance due to a conflict of interest. In his revised motion, Taylor focused on trial counsel's substance abuse problems and claimed that trial counsel was "inclined to divest himself" of any additional burdens to his recovery. He also noted that trial counsel faced possible disciplinary action by the bar as well as a contempt sanction from the district court. Thus, Taylor claimed, trial counsel pressured him into accepting the government's plea agreement in order to dispose of the case as quickly as possible.
 
 
 10
 Trial counsel's affidavit, submitted with the government's opposition to the motion to withdraw, painted a very different picture of his relationship with Taylor. Trial counsel denied any economic coercion and portrayed conscientious efforts on behalf of a client who was potentially facing multiple criminal charges. Trial counsel acknowledged his advice that Taylor pursue a global plea agreement with the government, and described his repeated efforts, some successful, to obtain more favorable terms.
 
 
 11
 When Taylor's motion to withdraw came before the district court on December 9, 1996, the court observed that neither the pleadings nor the affidavits suggested that Taylor had any viable defense to the criminal contempt or wire fraud charges. Taylor's new counsel then alerted the court, for the first time, to a factual dispute over trial counsel's advice to Taylor regarding the refinancing of his home.[5] Trial counsel stated in his affidavit that he had "specifically advised [Taylor] against [the refinancing] and told him that to refinance the house would probably constitute the encumbrance of an asset and would likely be in violation of the court ordered asset freeze." Taylor disputed this statement, averring that trial counsel had advised him to proceed with the refinancing. Thus, new counsel argued, Taylor had an advice of counsel defense to the contempt charges of which he had not been informed. Further, new counsel urged that trial counsel would have had a conflict of interest in presenting this defense. Although this issue had not been previously briefed, the district court continued the hearing to allow Taylor to file "whatever he alleges his defense is."
 
 
 12
 In a supplemental affidavit Taylor averred that prior to refinancing his home he had sought advice from trial counsel and had been told, "Go ahead and do it. There is nothing in the [freeze orders] which prevents you from refinancing your home." According to Taylor, trial counsel had only cautioned that the SEC would be upset and discussed the ambiguous nature of the order.[6] Taylor also submitted documents that [329 U.S.App.D.C. 236] he had sent to trial counsel indicating that at one point he did not want to enter a guilty plea, but wanted to force the government to prove its case, and that he had defenses regarding several of the charges.
 
 
 13
 After further argument by counsel, the district court denied Taylor's motion without an evidentiary hearing. Based upon Taylor's affidavits, the government's oppositions to withdrawal of the plea, trial counsel's affidavit, Taylor's sworn statements at the Rule 11 hearing, and the court's knowledge of the misdemeanor contempt proceedings, the district court found that Taylor's claims of ineffective assistance were not credible, and, alternatively, that even if Taylor's allegations were true, he could not show that he had been prejudiced. The court was unpersuaded by Taylor's change of heart about trial counsel after repeatedly reaffirming his satisfaction with counsel, and by the economic coercion claim since trial counsel had taken the case to trial and the plea was not entered until after the trial had been completed. The court recalled Taylor's statements under oath at the Rule 11 hearing that his plea was voluntary and that he was satisfied with his trial counsel. Regarding prejudice, the court observed that Taylor "was never able to present a single viable defense to the charges," not even at the plea withdrawal proceedings, after taking months to prepare his collateral attack. Finally, the court noted that Taylor "cannot present any convincing evidence that he might have faced better prospects at a verdict than he did in his plea." The district court sentenced Taylor to forty-one months imprisonment on each count, to run concurrently, and ordered him to pay a special assessment of $200 and to make restitution in the amount of $80,122.63.
 
 II.
 
 14
 Withdrawal of a guilty plea prior to sentencing is to be liberally granted, and permitted for "any fair and just reason." FED.R.CRIM.P. 32(e); United States v. Ford, 993 F.2d 249, 251 (D.C.Cir.1993). In reviewing the district court's denial of a motion to withdraw, this court focuses on three factors in order to determine whether there was an abuse of discretion: (1) "whether the defendant has asserted a viable claim of innocence"; (2) "whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case;" and (3) "whether the guilty plea was somehow tainted." Ford, 993 F.2d at 251. The third factor is the "most important," and the standard for allowing withdrawal of a plea is fairly lenient when the defendant can show that the plea was entered unconstitutionally. Id. Here, the government does not claim substantial prejudice under the second factor, and Taylor's conflict of interest claim is directly related to his contention that he has presented a viable claim of innocence, at least for some of the charges against him. Hence, our focus is on the third factor, for Taylor contends that his guilty plea was tainted by the ineffective assistance of his trial counsel and, consequently, he did not knowingly enter his plea.
 
 
 15
 "A plea is not voluntary or intelligent," and therefore unconstitutional, "if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence such that the defendant does not receive effective assistance of counsel." United States v. Loughery, 908 F.2d 1014, 1018 (D.C.Cir.1990). To withdraw a plea on this basis, a defendant must ordinarily satisfy the two-pronged standard of Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), for violations of the Sixth Amendment guarantee. See Hill v. Lockhart, 474 U.S. 52, 57-60, 106 S.Ct. 366, 369-71, 88 L.Ed.2d 203 (1985); United States v. Holland, 117 F.3d 589, 594 (D.C.Cir.1997); United States v. Horne, 987 F.2d 833, 835 (D.C.Cir.1993). A defendant must therefore show first, that his counsel's performance "fell below an objective standard of reasonableness" by identifying specific "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 687-88, 690, 104 S.Ct. at 2064-66. Second, a defendant must demonstrate that the deficiencies in his representation were prejudicial to his defense. Id. at 692, 104 S.Ct. at 2067. He "must show that there is a [329 U.S.App.D.C. 237] reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. at 370-71.
 
 
 16
 Taylor maintains, however, that his assertions of ineffectiveness fall within a "genre" of ineffective assistance claims based upon a counsel's conflict of interest. United States v. Bruce, 89 F.3d 886, 893 (D.C.Cir.1996). In Cuyler v. Sullivan, 446 U.S. 335, 349-350, 100 S.Ct. 1708, 1718-19, 64 L.Ed.2d 333 (1980), the Supreme Court recognized that a defendant's Sixth Amendment right to effective assistance of counsel may be violated when an actual conflict of interest adversely affects the adequacy of the defendant's representation. See id. at 349-51, 100 S.Ct. at 1718-20. In that event, prejudice will be presumed "if the defendant demonstrates that counsel 'actively represented conflicting interests' " and that the conflict "adversely affected his lawyer's performance." Strickland, 466 U.S. at 692, 104 S.Ct. at 2067 (quoting Cuyler, 446 U.S. at 350, 348, 100 S.Ct. at 1719, 1718); accord Bruce, 89 F.3d at 893. In order to present a valid Cuyler claim, this court requires a defendant to show that his counsel advanced his own, or another client's, interest to the detriment of the defendant. See Bruce, 89 F.3d at 893. Counsel's action, moreover, must be knowing; counsel who remains unaware of adverse interests among clients does not have an "actual conflict." See United States v. Gantt, 140 F.3d 249 (D.C.Cir. 1998) (opinion forthcoming). "If an attorney fails to make a legitimate argument because of the attorney's conflicting interest ... then the Cuyler standard has been met." Bruce, 89 F.3d at 896 (emphasis in original).
 
 
 17
 It is true that the court has generally been reluctant to allow defendants to "force their ineffective assistance claims into the 'actual conflict of interest' framework ... and thereby supplant the strict Strickland standard with the far more lenient Cuyler test." United States v. Bruce, 89 F.3d 886, 893 (D.C.Cir.1996) (citing United States v. Leggett, 81 F.3d 220, 227 (D.C.Cir.1996), and United States v. Farley, 72 F.3d 158, 166 (D.C.Cir.1995)). In Cuyler, the Supreme Court was confronted with special problems of multiple representation: two attorneys jointly represented three defendants. See Cuyler, 446 U.S. at 337, 100 S.Ct. at 1712. The record indicated that counsel differed in their views about how one defendant's case should be handled, and that there were ways in which proceeding on behalf of one defendant might have harmed another defendant. See id. at 338-340, 100 S.Ct. at 1712-14. Emphasizing that "the possibility of conflict is insufficient to impugn a criminal conviction," the Court held that to demonstrate a violation of the Sixth Amendment "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Id. at 350, 100 S.Ct. at 1719. Under such circumstances, the Court determined prejudice would then be presumed. Id. at 350, 100 S.Ct. at 1719. Subsequently, in Strickland, the Court reemphasized that "[p]rejudice is presumed only if the defendant demonstrated that counsel 'actively represented conflicting interest' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " 466 U.S. at 692, 104 S.Ct. at 2067 (quoting Cuyler, 446 U.S. at 348, 100 S.Ct. at 1718). In the context of joint representation, this standard is more easily satisfied because "when an attorney represents two clients with opposing interests, the attorney cannot serve both clients adequately.... [The attorney] 'must fail one or do nothing and fail both.' " Perillo v. Johnson, 79 F.3d 441, 447 (5th Cir.1996) (quoting Beets v. Scott, 65 F.3d 1258, 1270 (5th Cir.1995)). But when other conflicts are alleged to have impaired counsel's performance, the defendant's burden is to show that counsel actually acted in a manner that adversely affected his representation by doing something, or refraining from doing something, that a non-conflicted counsel would not have done. See United States v. Soldevila-Lopez, 17 F.3d 480, 486-87 (1st Cir.1994).
 
 
 18
 In order for there to be an "actual conflict," an attorney must be forced to make a choice advancing his own interest at the expense of his client's. See Bruce, 89 F.3d at 893. An ethical lapse is not the same as a conflict of interest, Bruce, 89 F.3d at 893-94, and a Cuyler conflict does not arise from mere "friction between trial counsel and the [329 U.S.App.D.C. 238] court,"Shark, 51 F.3d at 1076, or from a misunderstanding between a defendant and trial counsel on trial tactics. See United States v. Leggett, 81 F.3d 220, 227 (D.C.Cir.1996). Neither is a hypothetical conflict having no effect on trial counsel's representation enough to come within Cuyler's reach and thus avoid the need to show Strickland prejudice. See Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719; Bucuvalas v. United States, 98 F.3d 652, 657 (1st Cir.1996) (requiring more than some attenuated hypothesis having little consequence to the adequacy of representation); United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir.1988).
 
 
 19
 As a threshold matter, we find unpersuasive the government's contention that Taylor waived any right to contest his trial counsel's deficient representation. Taylor's appeal relies on events of which he was not then aware or that occurred after he had assured the district court that he was satisfied with his trial counsel. Throughout the course of the trial, Taylor was aware of his trial counsel's personal difficulties and professional lapses and was offered the opportunity to change counsel by the court. On several occasions the district court warned Taylor that by allowing counsel to continue, Taylor would "waive any rights that [he] ha[d] to object to his failure to properly represent [him] in the past or at present or in the future because of his condition." Still he decided to retain his trial counsel. Because a defendant can entirely waive his or her right to counsel, see Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and courts have recognized that a co-defendant can waive his or her right to conflict-free counsel in agreeing to joint representation, see, e.g., United States v. Rico, 51 F.3d 495, 509-512 (5th Cir.1995), the government contends that Taylor could similarly waive in advance all claims concerning the quality of his representation. Taylor's response to the district court's repeated warnings, it maintains, constitutes such a general waiver.
 
 
 20
 The court, however, must "indulge every reasonable presumption against the waiver of the unimpaired assistance of counsel." Campbell v. United States, 352 F.2d 359, 361 (D.C.Cir.1965) (citing Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464-65, 86 L.Ed. 680 (1942)). Consequently, Taylor's averments of satisfaction are properly viewed more narrowly than the government urges. The court may assume for purposes of the instant appeal that his expressions of satisfaction with his trial counsel's performance bar any claims arising from prior acts or omissions of counsel of which Taylor reasonably could or should have known. Furthermore, in light of the district court's warnings, the court may assume that Taylor also knowingly and voluntarily waived any future claims of ineffective assistance based upon trial counsel's drug abuse, at least to the extent it was known and understood by Taylor. But Taylor did not indiscriminately waive his right to pursue ineffectiveness claims on other grounds, such as those addressed here. Cf. United States v. Lowry, 971 F.2d 55, 63 (7th Cir.1992). Taylor could not have foreseen trial counsel's conduct in plea negotiations with the government and was unaware of trial counsel's alleged conflicts when he affirmed the adequacy of his representation. Cf. United States v. Raynor, 989 F.Supp. 43, 44 (D.D.C. 1997). Even if Taylor's statements were broadly construed to include his present conflict of interest claims, they could not have formed a valid waiver because he did not know of his possible advice of counsel defense when he made them. See Johnson, 304 U.S. at 464, 58 S.Ct. at 1023.
 
 
 21
 Turning to the merits, Taylor contends on appeal that trial counsel had three different conflicts, only one of which requires extended discussion. First, he maintains that trial counsel was inclined to end the case as quickly as possible because trial counsel risked being held in contempt if he did not continue to satisfy the district court that he was complying with his drug treatment program. Standing alone this is insufficient to show a conflict of interest inasmuch as the court has previously observed that such a claim is meritless.[7] See United States v. [329 U.S.App.D.C. 239] Shark, 51 F.3d 1072, 1075-76 (D.C.Cir.1995). Because all attorneys potentially face contempt citations, no particular attorney can be considered ineffective due to a concern that he or she might be so cited. See id. at 1076.
 
 
 22
 Second, Taylor maintains that trial counsel's personal financial interest also motivated him to dispose of the case through a plea without regard for Taylor's interests. Yet, this too, is unpersuasive for the reasons noted by the district court, and because many defendants undoubtedly face similar financial demands from their counsel. Although a "defendant's failure to pay fees may cause some divisiveness between attorney and client," courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client.[8] United States v. O'Neil, 118 F.3d 65, 71 (2d Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 728, 139 L.Ed.2d 666 (1998); United States v. Jeffers, 520 F.2d 1256, 1265 (7th Cir.1975) (Stevens, J.). But cf. Daniels v. United States, 54 F.3d 290, 294 (7th Cir.1995). The district court rejected Taylor's allegations of financial pressure as incredible in view of the fact that trial counsel had completed the trial before Taylor pleaded guilty. Even if Taylor's trial costs were not necessarily at an end because he potentially faced felony contempt and wire fraud charges, his affidavit focuses solely on the past, alleging that trial counsel asked him for more money on several occasions, the last being July 12. Trial counsel, however, continued to represent Taylor at both the civil contempt hearing on July 17 and the criminal contempt hearing on July 19 without incident. Taylor admits, moreover, that trial counsel never stated or otherwise threatened that he would cease his representation if Taylor failed to pay more money. Viewed in combination with Taylor's sworn statement at the Rule 11 hearing that he had not been coerced, he fails to allege any credible "actual conflict" with trial counsel. Cf. Gantt, 140 F.3d 249 (D.C.Cir.) (opinion forthcoming).
 
 
 23
 Third, and more troubling, Taylor maintains that trial counsel had a conflict of interest in presenting an advice of counsel defense and therefore it was in counsel's personal interest to bring the case to a prompt conclusion through a global plea. Specifically, he maintains that his trial counsel failed to advise him of a viable advice of counsel defense to the charges of felony criminal contempt that, along with the independent wire fraud charges, were a significant motivating factor in his decision to accept the global plea agreement. He asserts this failure was caused, in part, by trial counsel's concern that informing him of his defense would reveal to his client, the district court, and the prosecutors that trial counsel had provided his client with clearly inaccurate legal advice. Hence, Taylor contends, trial counsel's interest in avoiding an advice of counsel defense was in competition with Taylor's interest to be informed of all viable defenses to the charges when making a decision whether to accept a plea offer.
 
 
 24
 Ordinarily, when a defendant seeks to withdraw a guilty plea on the basis of ineffective assistance of trial counsel the district court should hold an evidentiary hearing to determine the merits of the defendant's claims. "An evidentiary hearing is critical to [an] evaluation of most ineffective assistance of counsel claims, because these frequently concern matters outside the trial record, such as whether counsel properly investigated the case, considered relevant legal theories, or adequately prepared a defense." United States v. Cyrus, 890 F.2d 1245, 1247 (D.C.Cir.1989). On the other hand, some claims of ineffective assistance of counsel can be resolved on the basis of the trial transcripts and pleadings alone. See United States v. Fennell, 53 F.3d 1296, 1303-4 (D.C.Cir.1995), modified on reh'g, 77 F.3d 510 (1996); United States v. Pinkney, 543 [329 U.S.App.D.C. 240] F.2d 908, 914 (D.C.Cir.1976). For example, the alleged acts of deficient performance by counsel may have occurred in the course of proceedings before the trial court, thereby making a hearing unnecessary. Cf. Pinkney, 543 F.2d at 915. Or the motion may fail to allege sufficient facts or circumstances "upon which the elements of constitutionally deficient performance might properly be found." Id. at 916. Summary disposition may also be appropriate where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion. See id. at 916-17. Furthermore, in challenging a guilty plea on the basis of ineffective assistance, the representations of the defendant at the plea hearing as to the adequacy of counsel and the knowing and voluntary nature of his plea, see FED.R.CRIM.P. 11(d), may "constitute a formidable barrier" to his later refutations. Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). But that barrier, "although imposing, is not invariably insurmountable," and does not necessitate the summary denial of a motion to withdraw a guilty plea. Id. Only if the district court concludes that the defendant has not alleged any cognizable claim for relief, or that the defendant's "conclusory allegations [are] unsupported by specifics," or that the defendant's allegations "in the face of the record are wholly incredible" may it summarily dismiss the motion. Id.
 
 
 25
 Taylor's Cuyler claim is premised on the fact that had he not pleaded guilty, he could only have received a maximum sentence of six months imprisonment for misdemeanor contempt and would then have faced charges for wire fraud and felony contempt, based solely on the refinancing of his home. Had he known of his advice of counsel defense to the refinancing contempt charges, there is a reasonable probability, cf. Hill, 474 U.S. at 59, 106 S.Ct. at 370-71, that he would not have accepted the global plea agreement in which he pled guilty to felony contempt for both the bank transactions and the refinancing. Instead, he might have accepted the district court's ruling on misdemeanor contempt and attempted to defend against the more serious felony contempt charges. It was, after all, as trial counsel's affidavit confirms, the fear of future criminal contempt and wire fraud prosecutions that had driven the final plea negotiations.
 
 
 26
 To demonstrate the need for an evidentiary hearing, Taylor focuses on the factual dispute over trial counsel's advice on the refinancing. Because the home financing was not the subject of the misdemeanor contempt trial, it was impossible for the district court to determine from the trial record what communications Taylor and trial counsel may have had regarding the home financing, much less for the district court to evaluate trial counsel's explanation without the benefit of cross-examination. Were the district court to determine, after an evidentiary hearing, that Taylor's allegations are true, then trial counsel would have failed to advise him of an advice of counsel defense that trial counsel's own affidavit implies would have been a significant factor in Taylor's decision to accept the global plea agreement. Once Taylor's averment regarding trial counsel's advice is credited, it is not difficult to believe that trial counsel failed to provide Taylor with this important information at least in part because to do so would reveal to Taylor, the district court, and the prosecutor that trial counsel had provided his client with inaccurate legal advice. So viewed, trial counsel's interest in avoiding an advice of counsel defense was in competition with Taylor's interest to be informed of all viable defenses to the charges against him when making a decision whether to accept the global plea offer. But see Farley, 72 F.3d at 166.[9] In a real sense, then, "[trial counsel] 'was required to make a choice advancing his own interests to the detriment of his client's interests.' " Bruce, 89 F.3d at 893 (citations omitted).
 
 
 27
 Having presented an "actual conflict" by affidavit and otherwise sufficient, nonconclusory [329 U.S.App.D.C. 241] allegations about trial counsel's advice and its relationship to his decision to plead guilty, Taylor need only show that the conflict of interest "adversely affected his lawyer's performance." Strickland, 466 U.S. at 692, 104 S.Ct. at 2067 (quoting Cuyler, 446 U.S. at 348, 100 S.Ct. at 1718). The alleged conflict must have "had some negative effect upon his defense (defined as 'an actual lapse in representation')." Shark, 51 F.3d at 1075. In the instant case, trial counsel's lapse was his very failure to apprise Taylor of a potential defense that, if proved, could have provided a complete defense to the felony contempt charges arising out of Taylor's refinancing of his home.[10] Cf. Gambino, 864 F.2d at 1070. Notwithstanding the strong presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment," Strickland, 466 U.S. at 690, 104 S.Ct. at 2065-66, trial counsel's failure to inform his client about this defense clearly constituted deficient representation. Cf. Teague v. Scott, 60 F.3d 1167, 1170 (5th Cir.1995). Taylor was entitled to make an informed decision about whether to plead guilty or risk the district court's judgment in the misdemeanor contempt trial and defend against possible additional criminal charges. Cf. United States v. Shepherd, 102 F.3d 558, 563 (D.C.Cir.1997). Moreover, Taylor is not required to establish ultimate prejudice as defined by Strickland and Hill. Therefore, Taylor's allegation that trial counsel had failed to inform of him of this defense due to his conflict of interest presents a valid Cuyler claim, even if trial counsel succeeded in obtaining for Taylor what appears, on its face, to be a favorable plea agreement.
 
 
 28
 Accordingly, we reverse and remand the case to the district court for an evidentiary hearing to determine whether Taylor's allegation that his trial counsel advised him that refinancing his home would not violate the freeze orders is plausible, and if it is, to permit Taylor to withdraw his plea.
 
 
 
 [1]
 The orders were issued by different judges, but for simplicity, we refer to all freeze orders as being issued "by the district court."
 
 
 [2]
 Taylor allegedly stated in his application that he was not subject to any litigation and was earning $9,000 a month as a financial advisor
 
 
 [3]
 Taylor also waived his right to an indictment on the new criminal charges, waived venue on the wire fraud charge, and waived any double jeopardy claim with regard to the contempt charges arising from the bank transactions. He further agreed to disgorge the net proceeds from the home refinancing or provide proof of his inability to do so
 
 
 [4]
 At one point, Taylor sought new counsel for the misdemeanor contempt proceedings while retaining trial counsel in the civil case. He then changed his mind and indicated that he wished to retain trial counsel in the criminal matter but not the civil matter. The district court would not allow the latter arrangement, and Taylor subsequently agreed trial counsel could represent him in both cases
 
 
 [5]
 New counsel explained to the district court that he had not asserted this defense in the pleadings on the motion because he did not think that the government had a right to be privy to the nature of Taylor's defense should the case go to trial
 
 
 [6]
 Taylor also referred to an inadvertent-conduct defense to the wire fraud and claimed to have suggested potential defenses and witnesses for the misdemeanor contempt charge that trial counsel failed to pursue
 
 
 [7]
 Alternatively, as the government contends, Taylor has waived his claim that counsel was conflicted because he performed under the threat of a contempt sanction. Taylor knew about this when he agreed to retain counsel and this claim arises out of counsel's substance abuse problems
 
 
 [8]
 For this reason, at least one circuit has held that the nonpayment of legal fees does not constitute a Cuyler conflict and is more properly analyzed under Strickland. See O'Neil, 118 F.3d at 72; United States v. Wright, 845 F.Supp. 1041, 1073 n. 35 (D.N.J.), aff'd 46 F.3d 1120 (3d Cir.1994)
 
 
 [9]
 Farley is distinguishable because the defendant's claim that his counsel misadvised him was directly contradicted by the defendant's description of the advice to the district court. See Farley, 72 F.3d at 165 & n. 6. Also, had he misunderstood the guilty plea for any reason, the plea would have been involuntary and unconstitutional regardless of any advice his counsel may have given to him. So viewed, there could be no conflict of interest
 
 
 [10]
 The government does not contest the availability of an advice of counsel defense for charges of criminal contempt. The district court assumed that the defense was available in making its findings and we presently have no need to address the issue