# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Submitted November 13, 2018        Decided April 9, 2019

No. 17-3031

UNITED STATES OF AMERICA,
APPELLEE

v.

CALEB GRAY-BURRISS,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00178-1)

---

*Eric H. Kirchman*, appointed by the court, was on the brief for appellant.

*David Rybicki*, Deputy Assistant Attorney General, and *Vincent J. Falvo, Jr.*, Attorney, U.S. Department of Justice, were on the brief for appellee. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND, *Chief Judge*, and GRIFFITH and WILKINS, *Circuit Judges*.

1

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  A jury convicted Caleb Gray-Burriss of fraud and embezzlement stemming from his management of the National Association of Special Police and Security Officers.  We previously affirmed the convictions in most respects.  In accordance with this circuit's practice, however, we remanded Gray-Burriss' ineffective-assistance-of-counsel claims because he had not previously raised them in the district court.  That court conducted the remand proceedings in an exemplary fashion, leaving little for us to do other than recount its conclusions and express our agreement that Gray-Burriss' claims lack merit.[1]

I

In 1993, Caleb Gray-Burriss founded the National Association of Special Police and Security Officers (NASPSO), a union for private security officers working in federal buildings. Gray-Burriss held various high-ranking positions in the union, including executive director, secretary-treasurer, and president. By the early 2000s, Gray-Burriss' financial management of the union began to draw legal scrutiny.  In 2007, he entered into a consent decree with the Department of Labor to pay more than $100,000 in restitution for funds siphoned from NASPSO's pension and health plans.  In June 2010, a grand jury indicted Gray-Burriss for again misappropriating funds intended for the pension plan.  The grand jury returned a second superseding indictment in August 2012.

---

[1] This case was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties.  *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j).

The second superseding indictment alleged two schemes. In the first, Gray-Burriss deposited employer contributions to a NASPSO-sponsored pension plan into an ordinary checking account, from which he "would expend the funds of the NASPSO Pension Plan for himself, for NASPSO, and for third parties not entitled to those funds." Second Superseding Indictment ¶ 9 (J.A. 88). In the second scheme, Gray-Burriss embezzled more than $200,000 in union funds by, inter alia, directing the union's payroll company to increase his salary and bonus payments without authorization. For those actions, Gray-Burriss faced charges of mail fraud (counts 1-6), embezzlement (counts 7-12), and other related offenses.[2]

The district court set the case for trial in November 2012. Two attorneys represented Gray-Burriss at trial. Heather Shaner was appointed by the district court as Gray-Burriss' Criminal Justice Act (CJA) attorney in early July 2010, shortly after the first grand jury indictment. Patrick Christmas was retained by Gray-Burriss as primary trial counsel in July 2012.

The defense's principal strategy was to argue that Gray-Burriss had acted in good faith and that he was the victim of vindictive prosecution. During the trial, Shaner attempted to introduce testimony from David Levinson, a NASPSO attorney. According to her proffer, Levinson would have testified that he heard NASPSO general counsel Bruce Goodman tell a Department of Labor investigator that he had advised Gray-Burriss that it was permissible to use money from the union's

---

[2] The other counts charged Gray-Burriss with conspiracy to embezzle (count 13), destruction of subpoenaed documents (count 15), witness tampering (count 16), and Labor-Management Reporting and Disclosure Act violations (counts 17-19). He was also charged with criminal contempt for failing to comply with the 2007 consent decree (count 14).

pension fund to pay for union operating expenses. The district court excluded the proposed testimony as hearsay.

On December 4, 2012, the jury convicted Gray-Burriss on eighteen of the nineteen counts of the indictment, acquitting him only of a witness-tampering charge. Material submitted to the jury included evidence and testimony that Gray-Burriss illegally wrote checks to himself from the pension fund, invested pension-fund monies in Brazilian junk bonds, and used union funds to make an initial payment of $1,399 on a Las Vegas condominium in his own name. In April 2013, the court sentenced him to serve 76 months in prison and to pay restitution and forfeiture in the amount of approximately $250,000 each, subtracting from the restitution obligation any money paid pursuant to the 2007 consent decree with the Department of Labor.

In Gray-Burriss' first appeal to this court, we affirmed the district court's judgment with only one exception. *United States v. Gray-Burriss*, 791 F.3d 50, 65 (D.C. Cir. 2015).[3] Following this circuit's usual practice, we remanded Gray-Burriss' newly raised claims of ineffective assistance by his trial counsel for initial consideration by the district court. *Id.* at 64.[4]

---

[3] We found error only in the court's decision to exclude from evidence the defendant's 2009 employment contract. 791 F.3d at 56. Although we held that error was harmless with respect to Gray-Burriss' convictions, we remanded for the court to determine whether consideration of the document would reduce the defendant's sentence or restitution and forfeiture obligations. *Id.* at 58-59. On remand, the district court determined that the same sentence was warranted, and Gray-Burriss has not raised that issue on this appeal.

[4] In so doing, we rejected Gray-Burriss' claim that his attorneys had a conflict of interest, recharacterized it as an ineffective-assistance claim, and included it in the remand. 791 F.3d at 64.

On remand, represented by new counsel, Gray-Burriss moved for a new trial and resentencing based on his claims of ineffective assistance. Those claims principally relate to counts 1-6, involving Gray-Burriss' conduct with respect to the pension fund. In August 2016, the district court conducted a two-day evidentiary hearing, in which it heard testimony by all of the relevant witnesses: Gray-Burriss, attorneys Shaner and Christmas, and former union general counsel Goodman. Thereafter, it denied Gray-Burriss' motions, rejecting all of his arguments. *United States v. Gray-Burriss*, 251 F. Supp. 3d 13 (D.D.C. 2017). Gray-Burriss now appeals, raising what amounts to three claims of ineffective assistance.

II

As we explained in our previous opinion in this case, when an ineffective-assistance claim is first raised on appeal, this circuit's practice in most instances is to remand the claim to the district court:

> Due to the fact-intensive nature of the [ineffective-assistance] inquiry and the likelihood, when a defendant asserts his sixth amendment claim for the first time on direct appeal, that the relevant facts will not be part of the trial record, . . . this court's general practice is to remand the claim for an evidentiary hearing unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief.

*United States v. Gray-Burriss*, 791 F.3d at 60 (quoting *United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003)). The bar to obtain a remand is relatively low: "[A]ll that is required for a remand is 'a colorable and previously unexplored claim of

ineffective assistance.'" *United States v. Murray*, 897 F.3d 298, 310 (D.C. Cir. 2018) (quoting *Rashad*, 331 F.3d at 908).

In order to establish a claim of ineffective assistance on remand, however, a defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first, "deficiency" prong of *Strickland* requires a showing that the lawyer's performance "fell below an objective standard of reasonableness." *Id.* at 688. The second, "prejudice" prong "requires the defendant to demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004) (quoting *Strickland*, 466 U.S. at 694).

On appeal after a remand, "[w]e review de novo the District Court's denial of [the defendant's] claim of ineffective assistance of counsel, including the question whether [he] was prejudiced by [his] counsel's allegedly deficient performance." *United States v. Nwoye*, 824 F.3d 1129, 1134-35 (D.C. Cir. 2016) (citing *United States v. Abney*, 812 F.3d 1079, 1086-87 (D.C. Cir. 2016)). We "review for clear error any findings of historical fact embedded in the District Court's conclusions on deficient performance and prejudice." *Id.* at 1135 n.4. We address the defendant's three allegations of ineffective assistance below.

A

Gray-Burriss' first contention is that his trial counsel rendered ineffective assistance by failing to lay a proper foundation for an advice-of-counsel defense at trial. Gray-Burriss explains that his counsel had "contemplated advancing"

the argument that he "lack[ed] criminal intent and acted in good faith in handling Union funds." Gray-Burriss Br. 12. "Part of this included the defense that [Gray-Burriss] had been acting pursuant to advice of counsel in his dealing with the Union Pension funds." *Id.*

According to Gray-Burriss, former union general counsel Goodman would have testified that Goodman "had given [him] legal advice that the Union could borrow pension funds." *Id.* at 10. Although trial counsel did not call Goodman to testify at trial, Shaner sought to introduce Goodman's advice through David Levinson, another union attorney who heard Goodman tell a Department of Labor investigator about this alleged advice. The court excluded the proffered Levinson testimony as hearsay, not subject to an exception because there was no showing that Goodman was himself unavailable to testify. *See* FED. R. EVID. 804(a). Thereafter, trial counsel did not request an advice-of-counsel jury instruction.

Gray-Burriss maintains that his attorneys' conduct represented a triple failure of effective assistance: they failed to take reasonable steps to procure Goodman as a witness, failed to lay a foundation for a hearsay exception to cover Levinson's testimony, and failed to request an advice-of-counsel instruction. For a number of reasons, the district court correctly found that those "failures" did not constitute deficient performance by the attorneys. *See* 251 F. Supp. 3d at 21-22.[5]

---

[5] The court found, for example, that "[d]eclining to locate and call Goodman would have been a perfectly competent tactical decision under the circumstances, even if no other avenues existed for the admission of his testimony." 251 F. Supp. 3d at 21. This was because

[s]ubjecting Goodman to cross-examination would have been a treacherous proposition: Soon before Gray-Burriss's trial, he had

But Gray-Burriss' bigger *Strickland* problem, also set out in the district court's opinion, is the test's "prejudice" prong. Gray-Burriss maintains that, if Goodman had testified or if his statement had come in through a hearsay exception, the court would have granted a request for an advice-of-counsel instruction. Moreover, he insists, "[h]ad the jury been given the advice of counsel instruction there is . . . a reasonable probability that the result would have been different" -- in the form of a not-guilty verdict on some or all of the counts. Gray-Burriss Br. 42-43.

As the court explained, the flaw in this theory is that "there would have been no evidentiary basis for issuing an advice-of-counsel instruction even with Goodman's testimony." 251 F. Supp. 3d at 21. A defendant is not entitled to a jury instruction on that defense unless he introduces evidence that (1) "he relied in good faith on the counsel's advice that his course of conduct was legal," and (2) "he made full disclosure of all material facts to his attorney before receiving the advice at issue." *United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997). Goodman's testimony would not have satisfied either requirement.

---

lost his Maryland law license for placing client funds in his personal account, failing to pay clients' medical bills from settlement proceeds that he held in trust, failing to maintain a client trust account, and failing to keep required financial records. These actions clearly bear on Goodman's trustworthiness; Ms. Shaner may have understandably wanted to deemphasize any association between him, NASPSO, and Gray-Burriss.

*Id.* (citation omitted). The court also noted that Shaner's investigator had been unable to locate Goodman during the "critical months of 2012," and that "halting these efforts when she did was a perfectly reasonable decision under the circumstances and in light of her limited resources." *Id.* at 22.

When he testified at the evidentiary hearing on remand, "Goodman recounted his specific legal advice to Gray-Burriss as follows: 'I advised him that I saw no impediment for the union to borrow the monies [from the pension fund] for [a particular Valentine's Day] dance.'" 251 F. Supp. 3d at 21 (quoting Evid. Hr'g Tr. 141 (J.A. 321)); *see also* Evid. Hr'g Tr. 137 (J.A. 317) (Goodman's testimony that "my only real foray into [ERISA matters] was my discussion with Mr. Burriss with respect to the borrowing of monies by the union to hold that Valentine's Day dance"). Of course, Gray-Burriss took more than just the $1,200 needed for the Valentine's Day dance from the pension fund. He also took substantial amounts for other operational purposes, as well as for personal and third-party use.[6] Nor did Gray-Burriss identify any "effort he made to return a dime of the 'borrowed' funds -- with or without interest -- before he agreed to do so in a 2007 consent decree with the union." 251 F. Supp. 3d at 21. Thus, even if Goodman had testified, Gray-Burriss could not have shown that "he relied

---

[6] *See* Evid. Hr'g Tr. 196-98, 210-12 (J.A. 376-78, 390-92) (Gray-Burriss' testimony admitting cash withdrawals from the pension fund, the use of pension fund monies for a "bad investment" in Brazilian junk bonds, and the use of "union money" for a Las Vegas apartment payment); *id.* at 94-95 (J.A. 274-75) (Shaner's testimony acknowledging cash payments from the pension fund to Gray-Burriss without loan documentation); *id.* at 333 (J.A. 513) (acknowledgment by Gray-Burriss' new counsel on remand that there was evidence Gray-Burriss spent pension funds for his "personal use"); *see also, e.g.*, 11/19/12 Trial Tr. 57-58 (J.A. 696-97) (prosecution witness' testimony estimating $25,000 in withdrawals from the pension fund to cash or to Gray-Burriss); 6/22/06 Interview with Dep't of Labor ¶ 55 (J.A. 1644) (Gray-Burriss' admission that he withdrew "approximately $30,000 total in fees" from the pension plan).

in good faith on the counsel's advice." *DeFries*, 129 F.3d at 1308.[7]

Moreover, Gray-Burriss "also failed to show that he disclosed all material facts to Goodman before the advice was rendered." 251 F. Supp. 3d at 21. As the court recounted, "Goodman testified that at the time he gave the advice, Gray-Burriss had failed to inform him that he had already withdrawn substantial sums of money from the pension account." *Id.*; *see* Evid. Hr'g Tr. 146 (J.A. 326). And if a statement by Goodman had come in only through Levinson, the latter would have been wholly unable to testify as to whether Gray-Burriss had disclosed all material facts to Goodman. (There was no proffer that Levinson knew anything about that issue.) Thus, for this reason, too, there would have been "[no] foundation in the evidence sufficient to bring the [advice-of-counsel defense] into the case." *DeFries*, 129 F.3d at 1308 (internal quotation marks omitted). Accordingly, there is no "reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

---

[7] The district court acknowledged that "Gray-Burriss remembers [Goodman's] advice more expansively; he testified that Goodman told him 'that it was okay to use the pension fund' for union expenses *generally* -- 'that as long as we returned the money with interest, it wouldn't be a problem.'" 251 F. Supp. 3d at 21 (quoting Evid. Hr'g Tr. 160 (J.A. 340)). But the court held that it "cannot conclude that the defense would have been able to introduce evidence that Gray-Burriss relied in good faith on whichever version of the legal advice Goodman might have given." *Id.* In any event, Gray-Burriss' recollection of Goodman's advice is not at issue with respect to this claim; what matters is what Goodman would have said had counsel been able to obtain his testimony.

10

B

Gray-Burriss' second contention is that counsel was ineffective by "fail[ing] to secure the testimony of an expert witness on account[ing] to review the books and records to support the defense that [he] acted in good faith in dealing with the Union fund." Gray-Burriss Br. 11. As the court recounted:

> Shaner had retained an accountant, who contacted the government in September 2011 seeking to review NASPSO's financial records. The accountant declined to continue indefinitely in the case without satisfactory compensation. In the months before trial, the Court denied Gray-Burriss's request for payment of an expert accountant at public expense, and also granted the government's motion to preclude the defense's use of experts, because the deadline for disclosing expert witnesses had passed.

251 F. Supp. 3d at 22 (citation omitted). With respect to this claim, the deficient-performance prong of *Strickland* poses the bigger problem for the defendant.

The district court concluded that it was not objectively unreasonable for trial counsel to fail to secure the testimony of an accountant because that failure was largely the result of Gray-Burriss' own choices. Gray-Burriss was present in court when the trial judge declined to authorize the use of public funds until he filed an affidavit showing financial necessity.[8] 9/6/12 Status Hr'g Tr. 3, 10-14 (J.A. 623, 630-34). At the same hearing, Shaner stated -- in Gray-Burriss' presence -- that she would "ask

---

[8] Gray-Burriss' ability to pay for retained counsel (Christmas) was part of the reason the trial court required him to demonstrate financial need.

that Mr. Burriss . . . go back to the Office of the Federal Defender and fill out another affidavit" so that the funds could be authorized. *Id.* at 13 (J.A. 633). Gray-Burriss further "admitted at the evidentiary hearing that Shaner informed him that he could file an affidavit in support of his claimed financial need for use of CJA funds to hire a forensic accountant. He never did." 251 F. Supp. 3d at 23. Likewise, Christmas testified at the evidentiary hearing that he "talk[ed] to [Gray-Burriss] about him having to pay." Evid. Hr'g Tr. 278 (J.A. 458). Nonetheless, Gray-Burriss failed to take any further action. Under these circumstances, the court correctly concluded that, "[w]hile his counsel perhaps could have done more to assist Gray-Burriss in retaining an expert forensic accountant, their performance was hardly deficient because Gray-Burriss knew what needed to be done but did not take the necessary steps to obtain one." 251 F. Supp. 3d at 23; *see Strickland*, 466 U.S. at 681 (noting that "[l]imitations of time and money . . . may force early strategic choices, often based solely on conversations with the defendant and a review of the prosecution's evidence").

Moreover, given the potential for seriously damaging cross-examination, the district court further concluded that a "decision not to call such an expert then -- even if Gray-Burriss had qualified for CJA funding -- would have been a perfectly reasonable trial strategy, considering how severely it might have backfired." 251 F. Supp. 3d at 23; *see Strickland*, 466 U.S. at 681 (holding that "[a]mong the factors relevant to deciding whether particular strategic choices are reasonable are . . . the potential for prejudice from taking an unpursued line of defense"). As the court explained:

> [G]overnment counsel demonstrated at the evidentiary hearing [that] any expert accountant testifying on Gray-Burriss's behalf would have endured a blistering cross-examination about the details of specific

questionable transactions. [The] government would have asked the expert accountant if he or she believed an individual could have a "good-faith" basis for destroying records, failing to file tax returns, or purchasing an apartment in Las Vegas, all of which the evidence revealed Gray-Burriss had done.

*Id.* at 23 (citation omitted).

In short, because the failure to secure funds for an accountant was Gray-Burriss' fault rather than that of his attorneys, and given the damaging cross-examination that an accountant would have endured, the court correctly found that trial counsel did not render deficient performance. Because Gray-Burriss cannot satisfy *Strickland*'s first prong, we need not consider the prejudice prong before rejecting this claim of ineffective assistance.

C

Finally, Gray-Burriss contends that trial counsel "failed to properly prepare [him] to testify on his own behalf at trial," and, as a result, that his "waiver of his right to testify was not fully informed." Gray-Burriss Br. 11. In particular, he argues that trial counsel should have "subject[ed] him to mock cross-examination so that they could have determined how he would hold up and [he] could determine if he could respond effectively." *Id.* at 48. The district court found that this claim failed both prongs of *Strickland*. 251 F. Supp. 3d at 24. Once again, *Strickland*'s first prong poses the more difficult hurdle.

"For starters, the Court deem[ed] credible the independent testimony of both Shaner and Christmas that they *did* discuss with Gray-Burriss the advantages and disadvantages of testifying on his own behalf," including anticipated cross-

examination. 251 F. Supp. 3d at 24 (citing Evid. Hr'g Tr. 61, 118 (J.A. 241, 298) (Shaner); *id*. at 297 (J.A. 477) (Christmas)). Indeed, "Gray-Burriss acknowledged as much at the evidentiary hearing." *Id.* (citing Evid. Hr'g Tr. 177 (J.A. 357)). We agree with the district court that, "in these circumstances, trial counsel acted 'reasonabl[y] under prevailing professional norms' in declining to expend time and resources on mock examinations that they believed would be fruitless." *Id.* (quoting *Strickland*, 466 U.S. at 688).

With respect to *Strickland*'s second prong, the district court found "it highly unlikely that testimony from Gray-Burriss would have made an acquittal on one or more counts substantially more likely." *Id.* The court noted that Shaner testified she had "advised Gray-Burriss to accept a plea because of the 'overwhelming evidence' against him," and that "Christmas independently determined that certain evidence was particularly 'damning.'" *Id.* "Based on the magnitude of the evidence against Gray-Burriss, and having witnessed his recent cross-examination by the same government counsel who tried the case," the district court concluded that there was no reasonable probability that the defendant's testimony would have led to a different outcome at the trial. *Id.*

Of course, even this assumes there was a reasonable probability that a mock examination would have led Gray-Burriss to take the stand. But this is a claim he does not expressly make and that the preceding discussion suggests would have been unlikely. Indeed, Gray-Burriss acknowledged that Christmas had advised him that "the government was going to just rake me over the coals" on cross-examination. Evid. Hr'g Tr. 177 (J.A. 357). Hence, because neither *Strickland* prong is satisfied, we reject Gray-Burriss' final claim of ineffective assistance.

14

III

For the foregoing reasons, we conclude that Gray-Burriss' claims of ineffective assistance lack merit and affirm the district court's denial of his motion for a new trial.

*So ordered.*